**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

DAVID MICHAEL WHITE JR,

Plaintiff,

v.

LOPEZ,

Defendant.

CASE NO. 3:24-CV-869-HAB-AZ

**OPINION AND ORDER**

David Michael White Jr. ("White"), a prisoner without a lawyer, is proceeding in this case against Defendant "Officer Lopez" ("Defendant") for violating White's Eighth Amendment rights by (1) causing a delay in White receiving medical treatment following a fall while being transported within Indiana State Prison ("ISP"), and (2) creating a serious risk to White's safety by labeling him a snitch and offering to pay other inmates to kill him. (ECF No. 18 at 7). Defendant has moved for summary judgment, arguing White did not exhaust his administrative remedies before filing this lawsuit. (ECF No. 26). The motion is now fully briefed and thus ripe for ruling. (ECF Nos. 27, 31, 32).

Because the Court agrees that White did not exhaust the administrative remedies available to him, Defendant's motion for summary judgment will be GRANTED.

## I. FACTUAL BACKGROUND

White is an Indiana Department of Corrections ("IDOC") offender who, at all relevant times to this lawsuit, was incarcerated at the ISP in Michigan City, Indiana. (Statement of Material Facts, ECF No. 28, ¶ 2; hereafter "SMF ¶ __). Defendant, at all relevant times, was an officer with the IDOC.

Joshua Wallen ("Wallen") is employed by IDOC as the Grievance Specialist at the ISP in Michigan City. (Declaration of Joshua Wallen, ECF No. 26-1, "Wallen Decl. ¶ 1"). Wallen is familiar with and oversees the grievance process available to incarcerated individuals at ISP. (*Id.* ¶ 3). Wallen also has access to grievance records maintained for each offender, including electronic records maintained in the IDOC's internal system (DELTA), which is an electronic record of information relating to IDOC offenders, including records kept during IDOC daily operations and every incarcerated individual's grievance history. (*Id.* ¶¶ 3–4).

ISP has in place an Offender Grievance Process, which is available to White and other incarcerated individuals to provide an administrative process to resolve incarcerated individuals' concerns and complaints related to conditions of their confinement. (SMF ¶ 4; ECF No. 26-2). The Grievance Process requires an inmate to exhaust three time-sensitive steps before filing a lawsuit: (1) submitting a formal written grievance; (2) appealing in writing to the Warden/designee; and (3) appealing in writing to the Department Grievance Manager. (*Id.*) All three steps must be timely completed to successfully exhaust the grievance process. (SMF ¶ 8).

An inmate must first submit the "Offender Grievance" State Form 45471 within ten business days from the date of the incident giving rise to the complaint. (*Id.* ¶ 10). An inmate may obtain the form by requesting one from a member of ISP staff. (*Id.* ¶ 9). Once the form is submitted, it is reviewed within ten days of its receipt and either accepted and logged in to the DELTA system, or else rejected and returned to the inmate with State Form 45475, "Return of Grievance," identifying the reason for the rejection. (*Id.* ¶¶ 12, 14). An assigned Grievance Specialist has fifteen business days to investigate and issue a response to the complaining inmate. (*Id.* ¶ 15). If the Grievance Specialist fails to respond after twenty business days, the inmate can assume the grievance was denied and may appeal to the Warden/designee as if it were denied. (*Id.*).

If the inmate is dissatisfied with the Grievance Specialist's response, they may appeal the response by completing State Form 45473, "Grievance Appeal," which must be submitted within five business days after the grievance response report is issued. (*Id.* ¶ 16). Once received, the Grievance Specialist logs the date of receipt and forwards the inmate's appeal to the Warden/designee. (*Id.* ¶ 17). The Warden has ten business days[1] from receipt of the appeal to complete their response and return it to the inmate. (*Id.* ¶ 18). If the inmate is dissatisfied with the Warden's response, the inmate must check the "Disagree" box on the appeal response and submit that form and any additional documentation to the Department Offender Grievance Manager. (*Id.* ¶ 19). The Grievance Manager then has ten business days from the date the appeal is received to respond to the appeal.[2] (*Id.* ¶ 20). The decision of the Grievance Manager is final and marks the conclusion of the grievance process. (*Id.* ¶ 22).

White alleges that on May 26, 2024, he was being escorted by Officer Lopez from recreation back to his cell in the segregation unit when he fell on the stairs, injuring himself. (ECF No. 18). White's first claim is that Lopez was deliberately indifferent to his medical needs by delaying White from receiving adequate medical care. (*Id.*) His second claim is that Lopez created a serious risk to his safety by labeling White a "snitch" and offering to pay other inmates to hurt him. (*Id.*).

White filed his first grievance on May 30, 2024, which was assigned as Grievance Number 24-183117. (SMF ¶ 26). In that grievance, White described the incident in which he fell down the stairs while being escorted by Officer Lopez but does not mention any delay in receiving medical

---

[1] As with the original grievance filing, if the inmate does not receive a response within the ten-day time frame, he may then appeal to the Department Offender Grievance Manager as if the first appeal were denied by the Warden/designee. (*Id.* ¶ 18).

[2] If the inmate does not receive either a response or a notice of extension from the Grievance Manager within ten business days, the appeal is considered denied. (*Id.* ¶ 21).

care. (*Id.*; ECF No. 26-4). Having received no response to the May grievance, White submitted a new grievance form on July 8, 2024 (Grievance No. 24-186966) in which he complains again of his May 26 fall on the stairs and notes that he had received no response to his first grievance form. (SMF ¶ 27; ECF No. 26-5). This grievance was returned as duplicative on August 16, 2024. (SMF ¶ 27; ECF No. 26-6). On July 11, 2024, White also submitted a second grievance form under the original grievance number (24-183117), complaining again of the fall as the result of Officer Lopez's failure to secure White's arm as they walked up the stairs on May 26, and noting that, since the fall, he has experienced severe pain and stress. (SMF ¶ 28; ECF No. 26-7). The July 11 grievance form does not mention any delay in receiving medical care. (*Id.*) After receiving no response to his original grievance, White tried to appeal in Grievance No. 24-183117 on July 15, 2024, with a handwritten appeal form. (SMF ¶ 29; ECF No. 26-8). That appeal form only mentioned White's fall, with no allegation of any delay in obtaining medical treatment. (*Id.*)

Grievance Specialist Wallen eventually reviewed the original grievance and provided a response to White on September 26, 2024. (SMF ¶ 30; ECF No. 26-9). The response indicates that Wallen spoke with multiple IDOC officers, none of whom indicated they had knowledge of the incident or any injury/incident reports regarding the May 26 fall, and acknowledges that an investigation into the incident was initiated, though Wallen was not privy to the results of that investigation. (*Id.*) Having been provided a response, White's next step in the grievance process would be to either accept Wallen's response by checking "Agree" or to appeal the response by checking "Disagree." (SMF ¶ 30). On October 1, 2024, White checked the "Agree" box and signed his name below, indicating he accepted Wallen's response and was not appealing. (*Id.*; ECF No. 26-9). On October 14, 2024, White sent a "Request for Interview" form to Wallen saying that he had marked the "Disagree" box on the September 26 Response form, indicating that he wanted to

receive a grievance appeal by mail, but that he had yet to receive that appeal. (SMF ¶ 31). Wallen responded that White had checked "Agree." (*Id.*; ECF No. 26-10).[3] Because White agreed with Wallen's Response, he cannot have fully exhausted the grievance response because he did not appeal. (SMF ¶ 33).

On June 23, 2024, White initiated another grievance (Grievance No. 24-185942), in which he discusses the medical treatment (or alleged lack thereof) following the May 26 fall. (SMF ¶ 35; ECF No. 26-12). That grievance made no mention of Officer Lopez, instead asking only that all medical staff "be held accountable for their lack of timely treatment." (*Id.*) Because more than ten business days had passed from the date of the incident giving rise to the complaint, Grievance No. 24-185942 was returned as untimely. (SMF ¶ 36; ECF No. 26-13).

On February 24, 2025, White submitted a grievance form (Grievance No. 25-218507), alleging Officer Lopez used excessive force against him that same day by pushing White against a wall and squeezing his handcuffs tighter around White's wrists. (SMF ¶ 39; ECF No. 26-14). The grievance includes no mention of either of White's claims in this suit, and there was no grievance submitted as part of the MSJ designation or in the Inmate Grievance Log that refers to Officer Lopez labeling White a "snitch" and offering to pay other inmates to hurt him.

Based on these facts, Defendant moved for summary judgment.

## II. LEGAL STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions in file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ.

[3] Over the proceeding weeks, White sent two more "Request for Interview" forms to Wallen asking for a copy of the Grievance Response where he had checked "Agree," to which Wallen responded that he had already replied on October 22, 2024. (SMF ¶ 32; ECF No. 26-11).

P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials it its own pleading but must "marshal and present the court with the evidence [they] contend will prove [their] case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th. Cir. 2010).

## III. DISCUSSION

Prisoners are prohibited from bringing an action in federal court with respect to prison conditions "until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). This process allows prison officials an informal way to resolve disputes that incarcerated individuals may have before they are brought in front of a court. This exhaustion requirement "applies to all inmate suits about prison life," including general circumstances and specific occurrences. *Porter v. Nussle,* 534 U.S. 516, 524 (2002). "A suit filed by a prisoner before administrative remedies have been exhausted must be dismissed." *Perez v. Wis. Dep't of Corrs.*, 182 F.3d 532, 535 (7th Cir. 1999). Nevertheless, "failure to exhaust is an affirmative defense that a defendant has the burden of proving." *King v. McCarthy*, 781 F.3d 889, 893 (7th Cir. 2015).

The law takes a "strict compliance approach to exhaustion." *Lockett v. Bonson,* 937 F.3d 1016, 1025 (7th Cir. 2019) (citation omitted). To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require. *Id*. But inmates are only required to exhaust administrative remedies that are made "available" to them. *Woodford v. Ngo*, 548 U.S. 81, 102 (2006). To be sure, a prisoner cannot argue that a remedy is unavailable when the prisoner causes the unavailability of the grievance process by not filing a grievance in a timely manner. *Kaba v. Stepp*, 458 F.3d 678, 684. (7th Cir. 2006). But a prisoner may argue that a

remedy is unavailable when a prison official prevents an inmate from properly accessing the administrative remedy and the "on paper" remedy is no longer in reality "available." *Id*.

Defendant's motion seeks summary judgment asserting that neither claim White alleges in this suit were exhausted because White submitted no grievance form pertaining to any alleged failure or delay by Officer Lopez to obtain medical care for White after the May 2024 fall and because White failed to grieve the "snitch" and "offer to pay other inmates to hurt White" issues entirely. As to the latter claim, White fails to respond to that argument, and the record is clear that no grievance was ever filed mentioning those allegations. Thus, there is no genuine issue of fact on this claim and summary judgment is appropriate as to White's claim that Officer Lopez created a serious risk to White's safety by labeling him a snitch and offering to pay other inmates to hurt him.

As to the grievances related to the May 2024 fall, White's Response focuses on the delay in receiving a response to his grievances rather than Defendant's argument that White failed to grieve that Officer Lopez failed to obtain him timely medical care. The fact that no grievance connects Officer Lopez to any alleged delay in medical care is thus undisputed, making summary judgment appropriate on this claim as well. Whether the delay in receiving a response from the Grievance Specialist caused the grievance process to be "unavailable" to White is immaterial when he has provided no argument—and the record contains no evidence—indicating that he ever grieved that issue in the first place. Thus, the undisputed facts show that White had available administrative remedies which he failed to exhaust before filing this suit.

Thus, Defendant's Motion for Summary Judgment for failure to exhaust is GRANTED.

## IV. CONCLUSION

Defendant's Motion for Summary Judgment (ECF No. 26) is GRANTED. The Clerk is directed to enter judgment in favor of the Defendant.

**SO ORDERED** on September 17, 2026.

s/ Holly A. Brady
CHIEF JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT